## GILES *v.* PAXSON *et al.*

*(Circuit Court, N. D. Iowa, E. D.* October 29, 1889.)

VENDOR AND VENDEE—CONTRACTS—PERFORMANCE.

 Under a contract for the purchase of an interest in real estate, to the larger part of which titles were admitted to be imperfect, reserving to the purchaser the privilege of making "a further investigation of the condition of the property aforesaid, and if, upon such examination, it is not found satisfactory, and that the representations as made by the parties of the first part are substantially correct, the said purchaser has the privilege of declaring said contract null and void" by giving notice within a certain time, it is for the purchaser alone to determine whether he shall complete the purchase, and his right to refuse to complete it is not affected by any action of his in pursuance of another and independent provision of the same contract, that all of the parties thereto shall have the option of taking a *pro rata* share of land subsequently purchased by any of them.

At Law. Action on contract.
*Adams & Mathews,* for plaintiff.
*H. C. Noyes* and *Ed. P. Seeds,* for defendants.

SHIRAS, J. On the 17th day of January, 1887, the parties to this action entered into a contract in writing touching the purchase by plaintiff of an undivided one-third interest in certain lands in the states of Missouri and Arkansas, in which the defendants were interested. The contract sets forth at considerable length descriptions of the various tracts of land intended to be included within the contract; averring that "the said parties of the first part claim ownership to about 22,533 acres of

land, as perfected titles, and to about 39,694 acres more, the titles to which are subject to tax and other conditions, regarding which effort is now being made to perfect and determine against adverse claims." After describing certain lands not intended to be included in the sale, the contract further provides that—

"Whereas, the said William A. Giles, party of the second part, is desirous of purchasing an undivided one-third interest in all said above-described lands and interests, as owned by said parties of first part, (with exceptions set forth and reserved,) for the sum of eleven thousand dollars, now, therefore, it is mutually agreed by all parties hereto that said purchase and sale be made, and the same is hereby consummated, subject to the privilege given said Giles to make a further investigation of the conditions of the property aforesaid, and also of the titles thereto. And if, upon such examination, it is not found satisfactory, and that the representations as made by the parties of the first part are substantially correct, then said Giles has the privilege of declaring said contract null and void by giving notice in writing to W. Henry Williams, of Chicago, or to said Charles Paxson, at Manchester, Iowa, by registering said notice at Chicago post-office, or personal notice of his (the said Giles') intention to make void this said contract, in which case said first parties hereby promise and agree to repay to said Giles any and all moneys paid by him on this contract, with interest at six per cent. per annum after May 15, 1887, within 90 days after May 15, 1887. If said Giles, on or before said 15th day of May, 1887, decides to consummate this purchase, he shall then give due notice, and shall make in addition to the payment of ($5,000) five thousand dollars at the time of signing and delivering this contract, the receipt of which is hereby acknowledged by parties of the first part, the further sum of six thousand dollars in cash on or before July 1, 1887, and then a full conveyance or assignment shall be made by the parties of the first part hereto to the said second party of a full undivided one-third interest of the lands and interests herein referred to in Arkansas and Missouri; it being understood that any expense and care in the management of said estate and disbursements made in perfecting titles to the same shall be chargeable and paid by parties in interest in proportion to their several interests at the time of consummating this contract. It is also agreed, in the event of further purchases of interests in Arkansas by any of the parties hereto, it shall be at the option of all parties to take a *pro rata* share in the same at net cost. All offers for the purchase of any lands herein referred to must be consented to by all parties hereto. The parties of the first part agree to furnish abstracts of perfected titles, and other evidences of title, to the aforesaid land to the party of the second part within 90 days. In witness whereof," etc.

By mutual agreement, the time allowed Giles for examining the titles and condition of the lands was subsequently extended until June 20, 1887. The defendants furnished to the plaintiff, for his examination, certain abstracts of title-deeds, and other evidences of the state of the titles, and the plaintiff went to Arkansas for the purpose of examining the lands; and on or about the 18th of June, 1887, he gave notice, by sending a registered letter to Charles Paxson, that he had concluded not to complete the purchase, and he also demanded the repayment of the $5,000. The other parties refusing to repay this sum, this action was brought for the recovery thereof.

The right of plaintiff to recover turns upon the construction to be placed upon the contract reserving to Giles the privilege of making in-

vestigation touching the lands, and the titles thereto, and, if not found satisfactory, to then declare the contract at an end. The position of the plaintiff is that the contract made him the judge of the acceptability of the titles; so that his determination, made within the time allowed him for examination, and duly notified to the other parties, would either make the contract binding or terminate it. On part of the defendants, it is insisted that the plaintiff is bound to show a sufficient reason for his alleged dissatisfaction; or, in other words, that the plaintiff cannot terminate the contract at his own pleasure, but can do so only if good ground exists for refusing to carry it out, or that, if the facts show that he ought to be satisfied, the law holds that he is satisfied. There can be no question that as to certain kinds of contracts the rule contended for by defendants is applied. Thus, if one is induced to expend money or labor in the production of some article, or in the improvement of another's property, under a contract which binds him to do the work in a satisfactory manner, the one party cannot ordinarily retain the benefit of what has been done, and yet repudiate the obligation to pay therefor by merely claiming that the contract has not been performed in a manner satisfactory to him. If the work or labor has been reasonably performed, according to the terms of the contract, it is held that the party is bound to be satisfied therewith because he has received all he contracted for. So, in sales of real estate, if a party contracts to sell a given piece of realty, and to convey a good and satisfactory title, the contract is met if the title conveyed is sufficient, and the vendee cannot nullify the contract by claiming that he is not satisfied, or by alleging frivolous exceptions to the chain of title. The rulings in these and similar classes of cases go upon the principle that the contracts of the parties must be reasonably construed; and, so construing them, it is held that all the one party has the right to demand of the other is such a performance of the contract as is reasonable, in view of the subject of the contract. If, however, the contract is so drawn that it is plain that it was the intent of the parties that the test of fulfillment should be the judgment of one of the parties, there is no reason why such a contract should not be held binding. It is so expressly held in regard to contracts to furnish articles to serve or gratify personal convenience, taste, or the like. Suppose an artist contracts to paint a portrait or other picture, and it is expressly agreed that the other party shall not be compelled to accept the picture unless it is entirely satisfactory to him. By such a contract the artist undertakes that he will furnish a picture satisfactory to the other party, and the latter cannot be compelled to take it unless he is satisfied with it. So, if A. contracts to sell a horse to B. for an agreed price, it being stipulated that B. shall have the right to drive the animal for a given period, and then, if he is not satisfied with him, he can return the horse and terminate the contract, certainly B. cannot be compelled to keep the horse unless he is satisfied with him. In each case the question is, what is the true construction of the contract?

Taking into account the subject of the contract, and the relation of the parties thereto, and construing the language of the contract in the light

thus thrown thereon, if it is clear that the parties have agreed that the one party shall have the right to decide, after a further examination or trial, whether he is satisfied to complete the purchase, certainly the courts cannot refuse to enforce the agreement as the parties have made it. What, then, is the construction to be placed upon the contract signed by the parties to the present action? It appears that the defendants were speculating in lands in Missouri and Arkansas. They claimed that they had perfected the titles to about 22,533 acres, and claimed the ownership of some 39,694 acres additional, the titles to which were yet unsettled. It also appears that it was their purpose to continue the business of buying up tax and other titles to other lands, and to sell the same at a profit. The business was not that of buying lands for cultivation and improvement, but that of buying and selling with a view to a money profit. It was proposed that the plaintiff should become interested in these purchases to the extent of taking an undivided one-third share, paying therefor the sum of $11,000. The interest to be acquired by Giles, and the amount to be paid therefor, were agreed upon; but there was reserved to Giles the privilege of making "a further investigation of the condition of the property aforesaid, and also the titles thereto; and if, upon such examination, it is not found satisfactory, and that the representations as made by the parties of the first part are substantially correct, then said Giles has the privilege of declaring said contract null and void," etc.; it being further provided that, in case he concluded to complete the contract of purchase, he should give notice thereof to the other parties. When this paper was signed; in effect it conferred upon Giles the right to become a purchaser of an undivided interest in the lands named. From the recitals of the paper, it is apparent that Giles had not fully committed himself to the purchase, but had reserved to himself the right to make further investigation into the condition of the lands, and the titles thereto. Counsel for defendants admit that Giles was not absolutely bound, and that, if sufficient reason therefor existed, he had the right to refuse to proceed further, and to recover back the money already paid; but their contention is that it was not for Giles to determine finally the question whether the condition of the property and the titles was or was not satisfactory, but that he was bound to be satisfied if the condition of the property and titles, upon examination, were found to be such that he ought to have been satisfied. The time within which Giles was to make the investigation, and determine whether he would nullify or complete the proposed purchase, was limited in the contract. He was required to make the investigation, and reach a conclusion thereon, within a given time, and to give notice thereof to the other parties. No criterion for reaching the conclusion, nor tribunal for deciding it, other than Giles' own judgment, is provided in the contract; and hence it is clear that it must have been the intent of the parties to leave the decision of the question to Giles' own judgment.

It is urged in argument that the principle should be applied that, if Giles ought to have been satisfied, the law will hold him bound. The facts of the case show that it would be impossible to apply this princi-

ple in the way contended for. What criterion could a court apply in determining whether Giles was bound to be satisfied? The property dealt with is real estate; and the contract itself provides that Giles is not bound to complete the purchase unless the titles are, upon investigation, found to be satisfactory. If the ordinary rule touching realty is applied, then Giles would not be bound to complete the purchase, unless the other parties furnish good titles to the entire property; for a title cannot be said to be, in law, satisfactory, unless it is sufficient to convey the property to the grantee. The defendants do not claim that the evidences of title that they furnished for Giles' inspection were such as to show a good title to the entire body of the land ; and the agreement on its face shows that, as to the larger part of the lands, the titles held by the defendants were imperfect.

Upon the argument it was said that all Giles could demand was that the other parties should furnish merchantable titles ; that is, titles that could be dealt in as matter of speculation. It is apparent from the contract and the evidence that the parties understood that the titles in question, and the interest of the defendants in the lands, was of a purely speculative character. Now, when Giles was asked to become a purchaser, it was not expected or represented by the defendants that they would be able to show that they held good titles to the entire number of acres. They claimed to have sufficient interest in the lands to make it an object to Giles to purchase an undivided interest therein for the price named ; but it was a matter of speculation, and, before Giles would agree to finally become interested, he reserved the right to further investigate, not only the titles, but the condition of the lands, in order to determine for himself whether he would purchase an interest or not. The suggestion that all Giles could demand was merchantable titles, in the sense of titles that might be dealt in as a matter of speculation, is illusive, for it furnishes no criterion for determining whether Giles ought to have been satisfied or not. There is a no market rate for titles, nor is there any rule for determining what would constitute merchantable titles. Construing the contract, then, with reference to the subject-matter, no force can be given to its provisions giving the privilege of further investigation to Giles unless it be held that he had thereby reserved to himself the right to investigate the condition of the lands, and the titles thereto, and, having made such investigation, to then determine whether he would complete the purchase or not.

It is further urged that the right to nullify the contract does not exist in favor of Giles unless the representations made by the parties of the first part are not substantially correct. Viewing the contract as an entirety, it must still be held that the right to examine into and determine this question was reserved to Giles himself. The contract requires the entire investigation to be made within a limited time, and requires Giles to decide whether he will proceed or retract. The ultimate question reserved for Giles' decision was whether he would complete the purchase of the undivided one-third interest or not; and all the matters to be investigated, whether as to the condition of the lands, the state of the

titles, or the representations of the defendants, were to be investigated, in order that he might understandingly exercise the judgment reserved to him of deciding whether he would or would not proceed with the proposed purchase. All the questions to be investigated were reserved for his judgment, or none of them were; and, according to the fair construction of the contract, the privilege of declaring the contract null and void is reserved to Giles if, upon investigation, he should determine that the representations made were not substantially correct, or that the conditions of the property or of the titles were not satisfactory. That this was the understanding of the parties at the time that the contract was entered into is further shown by the fact that no conveyance was executed to Giles of an interest in the property, but, on the contrary, it was provided that if Giles, after investigation, decided to proceed with the purchase, he was then to give notice of such conclusion, and complete the payment of the sum specified, and then the conveyance to him was to be executed. Taking all the provisions of the agreement into consideration, it is clear that both parties understood that it was left to Giles to decide, after due investigation, whether he would proceed or not; and as it appears, from the evidence, that Giles made the investigation he was privileged to make, decided that he was not satisfied to further proceed, and gave the notice in writing of such conclusion, as provided for in the contract, no good reason is assigned why the court should hold that he is still bound as a purchaser of an undivided interest in the lands described in the contract.

It further appears in evidence that, pending the decision of the question whether Giles would complete the purchase named, he bought certain lands known as the "Bradshaw Purchase," and Williams contracted for certain other lands. In the written agreement already referred to, it is provided that, "in the event of any further purchases or interests in Arkansas by any of the parties hereto, it shall be at the option of all parties to take a *pro rata* share in the same at net cost." When Giles sent the notice to defendants of his conclusion not to proceed further with the purchase of the lands described in the contract, he also notified the defendants that he had made the Bradshaw purchase, and that they could become interested therein by paying two-thirds of the cost thereof, and, further, that he might wish to take a third interest in the lands contracted for by Williams. It is now claimed that by this action on part of Giles he nullified the notice not to proceed with the purchase named in the contract, upon the theory that the contract was an entirety, and that he could not refuse to proceed with the purchase of the named lands, and yet treat the contract as in force. The plaintiff is not claiming the right to rescind the contract on the ground of mistake, fraud, or other like fact. On the contrary, he is seeking to enforce that part of the contract which gives him the right to demand the repayment of the $5,000 in case he should not decide to proceed in the purchase of an interest in the lands named. The right reserved to both parties to participate in the benefits of any other lands purchased in Arkansas is not, in terms, made dependent upon the ques-

tion whether Giles should or should not complete the purchase of an interest in the lands named; and hence his statement to the others, that he conceded to them the right to take an interest in the Bradshaw purchase, and claimed a like right in the Williams contract, cannot affect his right to refuse to complete the purchase of an interest in other lands. It certainly cannot be true that if, during the time Giles was investigating the titles to the 62,000 acres of land, the other parties had concluded to take an undivided two-thirds interest in the Bradshaw purchase, and Giles had conveyed it to them, thereby Giles could have lost the right to refuse to proceed in the purchase of an interest in the other lands. The fact that the other parties were satisfied to take an interest in the Bradshaw purchase would not affect the actual condition of the titles of the 62,000 acres, and could not deprive Giles of the right to investigate their condition, and, upon such investigation, to determine whether he would complete the purchase of an interest therein or not. The same is true of the corresponding right reserved to Giles of participating in the benefits of other lands purchased by any of the parties of the first part. These respective rights are merely options reserved to the respective parties, not obligations compelling them to purchase interests in other lands; and they do not limit or modify the right reserved to Giles to determine for himself, upon investigation, whether he would complete the purchase of an interest in the other named lands. This being the correct construction of the contract, it follows that Giles had the right to determine, upon investigation, whether he would complete the purchase or not. Having decided not to complete it, and having given notice of such decision to the other parties, then the latter became bound to repay him the $5,000 received from him. Having failed to repay the amount, plaintiff is entitled to judgment therefor, with 6 per cent. interest from May 15, 1887, and also for costs.