PAINE v STANDARD PLUNGER ELEVATOR CO.

(Circuit Court of Appeals, Third Circuit. February 8, 1913.)

No. 1,636.

1. PRINCIPAL AND AGENT (§ 89*)—ACTION by AGENT FOR COMMISSIONS—EVI-
DENCE CONSIDERED.
Findings of a referee to whom by agreement an action at law was re-
ferred under Pa. Act 1874 (P. L. 166), affirmed by the court, that plain-
tiff did not as agent make a contract for the furnishing and installation
of machinery by defendant, so as to entitle him to a commission thereon
under his contract of agency, held supported by the evidence.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216,
229–239; Dec. Dig. § 89.*]

2. APPEAL AND ERROR (§ 1017*)—REVIEW OF FINDINGS OF REFEREE.
The findings of a referee, whether the submission is by mere consent
or made in conformity to statutory authority, are not reviewable by the
court, unless there is such manifest error in the same as would justify
a court in setting aside, under like circumstances, the verdict of a jury.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911,
3961, 3996–4005; Dec. Dig. § 1017.*]

In Error to the District Court of the United States for the East-
ern District of Pennsylvania; J. B. McPherson, Judge.

Action at law by Leonard G. Paine against the Standard Plunger
Elevator Company. Judgment (192 Fed. 75) for defendant, and plain-
tiff brings error. Affirmed.

Henry Spalding and Joseph A. Slattery, both of Philadelphia, Pa.,
for plaintiff in error.

James E. Hood and John G. Johnson, both of Philadelphia, Pa., for
defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and RELL-
STAB, District Judge.

GRAY, Circuit Judge. The plaintiff below, plaintiff in error, is a
citizen of Pennsylvania, and the defendant below, defendant in error,
is a New Jersey corporation engaged in the manufacture and sale of
elevators, having its factory at Worcester, Mass., and its principal
office in the city of New York. On September 24, 1902, plaintiff
and defendant entered into a contract by which plaintiff became a
sales agent of the defendant, a brief memorandum being signed,
stating that the plaintiff was to receive a commission of 10 per cent.
"on all gross sales." On November 24, 1902, the plaintiff, at the re-
quest of one Jones, manager of the defendant company, addressed
a letter to the company, defining the terms of the agency. It was
agreed that the plaintiff should "act as agent of the company in Phil-
adelphia and vicinity, using his best efforts to secure work and also
to give whatever time possible to construction work in general," to
maintain a suitable office, with telephone, etc., free of charge to de-
fendant. Plaintiff was to receive 10 per cent. commission on the
face of all contracts secured in his territory, payable when the con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tracts were signed, and defendant was to advance to him, on account of commissions, the sum of $5,000 per annum, to be deducted from plaintiff's commission when and if earned.

This contract, at the request of plaintiff, was modified in January, 1903, the advance or guaranty being raised to $7,000 per year, so as to permit him to employ one Shafto as an assistant, "whom he considered a valuable man because of his acquaintance with architects and builders." A letter from Jones, manager of the defendant company, dated January 8, 1903, sets forth this modification in the contract and provides that the company "will allow you and your friend Shafto 10 per cent. commission on all sales made by you in Philadelphia, Washington, Baltimore, and such other territory as we may agree upon that you can properly handle. I will further guarantee to you the sum of $7,000 per year, payable in equal monthly payments. You are to pay all expenses, and at the end of the year we are to deduct from your commission the $7,000. The writer will see you within a short time, and we will determine what territory you will be able to handle." The important modification of the first contract is, that the commission is to be *on all sales made by plaintiff* in the territory assigned, instead of a commission "on the face of all contracts from my territory, payable when the contracts are signed."

On March 31, 1904, the defendant entered into two contracts for the erection and installation of its elevators in the Philadelphia and New York stores, respectively, of John Wanamaker. These two contracts aggregated the sum of $1,067,107.

On October 16, 1908, suit was brought by the plaintiff in the court below, for 10 per cent. commission upon this amount, with interest from March 31, 1904. Commissions on other sales were also claimed in the same suit, but this appeal raises only the question of the right to recover on the Wanamaker contract. When the case was at issue, it was by agreement referred to a referee, under the act of Assembly of the state of Pennsylvania, of May 14, 1874 (P. L. 166), and its supplements (Act 1889 [P. L. 80]). Subsequent proceedings can be best stated in the language of the court below in its brief opinion overruling the exceptions to the report of the referee, and rendering judgment in favor of the defendant in accordance therewith:

"This controversy was referred by the parties under the Pennsylvania Act of 1874 and its supplements. The first report of the referee contained a careful and extended discussion of the evidence; but, for the reasons given in (C. C.) 186 Fed. 605, it seemed desirable to return the case for further proceedings—especially that the findings of fact and conclusions of law might be stated separately and specifically. This has now been done in the supplemental report, which leaves nothing to be desired in the qualities of clearness and precision. The parties submitted numerous requests for findings of fact—the plaintiff 96, and the defendant 14—and numerous requests also for conclusions of law, 39 on behalf of the plaintiff, and 15 on behalf of the defendant. These requests were all answered specifically, and the answers are clear and unambiguous. It would be superfluous to go again over a ground that has already been so carefully traversed, for the result would only be to repeat in different language what the referee has already said so well. To the first report the plaintiff filed 88 exceptions; and to the supplemental report he has filed 90, and the defendant has filed 11. They have all been considered, but I think they need not be discussed in detail.

It seems enough to say that the controversy depends almost wholly upon questions of fact, and that upon these questions I agree with the referee's findings. His first report discussed the evidence very fully, and should be read in connection with the specific findings contained in the supplemental report. In my opinion the following conclusions are satisfactorily established:

"1. The plaintiff did not make the Wanamaker sale. He did not originally discover the business or bring it to the defendant's attention; and, while he helped afterwards to conduct the negotiations to a successful conclusion, he was no more prominent or influential than were others, and his work cannot possibly be disentangled and credited with a controlling influence. No doubt, he expected to be paid something for his services, and he deserved some remuneration; but he has no legal right to the 10 per cent. for which this suit is brought.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"The two reports of the referee are adopted as the opinion of the court. All the exceptions of both parties thereto are hereby overruled; and, in accordance with the recommendation of the learned referee, it is now ordered that the clerk enter judgment in favor of the defendant."

To this judgment a writ of error has been sued out by the plaintiff. The assignments of error, 33 in number, deal with the findings of fact of the referee, his refusal to find as requested by plaintiff, and his conclusions of law and the exceptions thereto, overruled by the court below. As a number of them are merely repetitions in different form of the substance of a single exception, it will be unnecessary to consider them in detail.

The gravamen of plaintiff's case, as presented in these assignments of error and in the record accompanying the same, may be stated in his contentions that, after his first employment, in September, 1902, he was instructed by Jones (manager of defendant company), that in any difficult or important negotiations in the making of sales, he should notify Jones, and that Jones would at any time help and assist him, and if they, working together, made a sale, the credit would go to plaintiff, and he would be paid commission on such sale. That a certain letter from plaintiff, dated March 12, 1903, inclosing a newspaper clipping to that effect, gave to the defendant its first definite information that John Wanamaker was about to go forward with the project of building his new stores in Philadelphia and New York, and the possibility of securing contracts for elevators to be installed in said stores. That thereafter, during the negotiations preceding the signing of contracts between the defendant and John Wanamaker, the plaintiff was active, as a go-between between the parties, in introducing the architects and engineers who had charge of Wanamaker's work, to the officers of the defendant, and that the correspondence between the parties was largely conducted through the plaintiff's office in Philadelphia; in other words, that the contracts were secured through his initiative, in first suggesting to defendant the idea and possibility of obtaining them, followed up by his active personal services in the negotiations which followed. The evidence adduced by the plaintiff in support of these main contentions, raises various subsidiary questions of fact that were submitted to the referee for determination in the light of all the testimony.

These contentions of the plaintiff were controverted by the defendant and evidence was adduced tending to show that defendant had never given to Jones the instruction and promise that if they were working together to make a sale, the credit would go to plaintiff, and that he would be paid a commission on such sale. Evidence was also adduced by defendant, tending to show that plaintiff's letter of March 12, 1903, was not the first information conveyed to defendant that Wanamaker was about to commence the erection of stores in Philadelphia and New York; that on the contrary, it was a matter of general information throughout the trade long prior to that date, and that elevator builders throughout the country, including the defendant, were on the lookout for opportunity to secure elevator contracts on such buildings, and that the specific information conveyed by the newspaper clipping in the letter of March 12, 1903, was obtained by one of their own directors prior to that date, who opened the subject with one of the Wanamaker firm, and solicited the contract for the defendant company. Defendant also contended, and adduced evidence tending to show, that the services performed by plaintiff, after negotiations for the contracts were commenced, were such as he was expected to perform through his office maintained by defendant company in Philadelphia, and in consideration of the salary or guaranteed commission of $7,000, given him by the defendant; that the office maintained by plaintiff out of his salary or guaranteed commission was practically defendant's office in Philadelphia, and that it naturally and properly availed itself of the convenience offered thereby for conducting its correspondence with the Wanamaker firm. Further, it finally contended that, though the contracts were signed March 31, 1904, when commissions, if any, would have been due to the plaintiff, and that, though he continued as agent until July, 1908, a period of more than four years, during which time his accounts as to commissions on one or more occasions were taken up with the officers of the defendant company and adjusted between them, no suggestion or claim of commission on account of these Wanamaker contracts was made by the plaintiff; that this commission was only brought up by him in July, 1908, when he was discharged, and the final adjustment was being made of his account with the defendant company.

In explanation of this important and significant fact, plaintiff adduced his own testimony and that of Jones, the former manager of the defendant company, but at that time out of its employ, as to a conversation alleged to have occurred between the plaintiff and the president of the company soon after the signing of the contracts, in March, 1904. This conversation, as variously stated, was to the effect that the plaintiff asked the president of the defendant company what he, the plaintiff, was to get out of the Wanamaker contract, and that the reply was made that they could not tell at that time, because the contract was a close one, and it could not with certainty be predicted how it would come out, and that the question of what he should receive should be deferred, with the hope that he might be treated liberally. Such a conversation was positively denied by the testimony of Woodin, the president. There was also evidence tending to show

that a letter had some time thereafter been addressed by the plaintiff to the president, Woodin, in which he admitted that he was not entitled to and did not claim a commission on the Wanamaker contracts. That letter, Woodin swore to having received, that he had searched for it, others had searched for it, but they were unable to find it. There was, however, testimony tending to show that such an admission had been made by the plaintiff.

[1] This and many other subsidiary questions of fact bearing on one side or the other of the controversy, between the parties, were all submitted to and passed upon by the referee, who, in a careful report and a subsequent one supplementary thereto, reviewed all the evidence and made specific findings of fact and law thereon. All these findings, as we have seen, have been passed upon by the court below and approved. We have carefully examined all the evidence contained in the record in this case, bearing upon the disputed questions of fact, and cannot find that in any of them the referee or the court was in error. At least, we can say we find no such gross error in any of them as to justify this court in substituting its judgment for that of the referee and the court below. Especially have we examined the evidence in the record bearing upon the finding of the referee and of the court below, that the letter from plaintiff of March 12, 1903, did not convey to the defendant the first information in regard to the proposed erection of the Wanamaker buildings in Philadelphia and New York. The testimony on this question was carefully weighed by the referee and the conclusion arrived at by him in favor of the defendant seems to us to have been in accord with the preponderating weight of that testimony.

While not acceding to the proposition that the case absolutely turns on the question, whether or not plaintiff had given the first information in regard to the intention of Wanamaker to erect new stores in Philadelphia and New York, and the possibility of securing contracts for the elevators therein, we are of opinion that the finding of the fact that such information was not first given by the plaintiff, taken in connection with all the other testimony in the case, justified the general conclusion that the plaintiff did not make the sale of the defendant's elevators, or so contribute thereto as to entitle him to the commission of 10 per cent. under his contract of January 8, 1903.

The conclusions of law made by the referee and affirmed by the court were such as naturally arose from the findings of fact. The questions were mixed questions of law and fact, and were correctly passed upon by the referee.

[2] The general rule applicable to the findings of a referee, whether the submission is by the mere consent of the parties or made in conformity to such statutory authority as exists in this case, is well settled; and such rulings are not reviewable by the court to which they are returned, unless there is such manifest error in the same as would justify a court in setting aside, under like circumstances, the verdict of a jury. The reviewing court will not weigh the evidence in support of the findings, but will only consider whether there is any substantial evidence to support the same. U. S. Projectile Co. v.

Sharpless (C. C.) 115 Fed. 996; Campbell v. Equitable Life Assur. Soc. (C. C.) 130 Fed. 786; Boatman's Bank v. Trower Bros. Co., 181 Fed. 804, 104 C. C. A. 314; United States v. Ramsay (C. C.) 158 Fed. 488; Kilduff v. Roebling (C. C.) 150 Fed. 240; Ansley v. City of Scranton, 218 Pa. 131, 67 Atl. 51.

Whatever might have been recovered by the plaintiff on a quantum meruit, for services undoubtedly meritorious, from what we have already said, it is hardly necessary to add that this court can find no ground upon which it would feel justified in disturbing in this suit the judgment below. The same is therefore affirmed.