## ST. LOUIS SMELTING & REFINING CO. v. NIX.

No. 13695—Opinion Filed Feb. 19, 1924.

Rehearing Denied April 8, 1924.

(Syllabus.)

1. **Principal and Agent—Right of Agent of Undisclosed Principal to Sue Alone on Contract.**

Where one enters into a contract for the purchase of property in his own name, and it is not shown by said contract that he is acting as the agent for others, and where action is brought by him to recover under the terms of the contract, he must be treated as the sole party in interest, though he may have been acting for undisclosed principals.

2. **Mines and Minerals—Sale of Property Subject to Approval of Title—Good Faith.**

Where by the terms of a contract for the sale of mining leases, mineral rights, etc., it is provided that abstracts of title shall be submitted to and the titles approved by the vendee's attorney, the opinion of such attorney, approving or disapproving such titles, is binding upon the parties, in the absence of fraud or bad faith, but there is in such contracts the implied condition that the person designated to approve the titles shall act in entire good faith to both of the contracting parties, and the want of such good faith will dispense with the condition requiring such approval.

3. **Same—Rescission by Vendee—Bad Faith in Rejecting Title—Burden of Proof.**

Where, in an action by the vendee to rescind a contract of sale of certain mining leases and recover a portion of the purchase price paid by him, because the titles thereto were disapproved by his attorney, the vendor pleaded bad faith upon the part of such vendee and his attorney in disapproving such titles, the burden of proof was on the vendor to establish such bad faith.

4. **Contracts—Offer and Acceptance—Sufficiency.**

In order that an offer and acceptance may result in a binding contract, the acceptance must be absolute, unconditional, and identical with the terms of the offer. It must in every respect meet and correspond with the offer: any qualification of or departure from those terms invalidates the offer.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by E. D. Nix, against St. Louis Smelting & Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Arthur C. Wallace, Robert E. Moloney, Geo. S. Ramsey. Malcolm E. Rosser, and Villard Martin (Boyle & Priest, of counsel), for plaintiff in error

Dick Rice, Archibald Bonds, Kelly Brown, and L. A. Wetzel, for defendant in error.

NICHOLSON, J. This action was brought by E. D. Nix, as plaintiff, against St. Louis Smelting & Refining Company, as defendant, to recover the sum of $50,000, with interest thereon at the rate of 6 per cent. per annum from December 6, 1917.

The controversy grew out of a contract between Nix and St. Louis Smelting & Refining Company bearing date the 26th day of October, 1917, by which the company agreed to sell to Nix certain mining leases, contracts for mining leases, mineral rights, mills, concentrating plants, improvements, and all other rights or interest owned by it on approximately 1,400 acres of land in the lead and zinc field in Ottawa county, for a consideration of $1,525,000, payable as follows: $50,000 to be deposited to the credit of the company in the First National Bank of Miami on or before 10 days from the date of the execution and delivery of the contract, the sum of $250,000 to be paid to the company within 60 days from the date of the execution and delivery of the contract, the remainder to be evidenced by notes maturing respectively in 3, 6, 9, and 12 months from the execution and delivery of the contract. Said contract contained the following stipulation:

"It is mutually understood and agreed between the two parties hereto that the party of the first part shall within ten days from the execution of this contract, or as soon thereafter as practicable, furnish to the party of the second part, abstracts of title, certified to date, to the tracts of land covered by said leases and contracts for mining leases. Said abstracts of title shall be submitted to and approved or disapproved by Dick Rice, attorney for party of the second part, and party of the second part shall have 30 days after the delivery to him of said abstracts, for this purpose. In the event of disapproval of the title to one or more of the tracts of land, party of the second part shall have the option to elect whether he shall accept said title or rescind this agreement. If this agreement is rescinded by reason of the disapproval of the title by the said Dick Rice, party of the first part shall return to the party of the second part his first payment of $50,000 hereinbefore referred to; the party of the second part shall notify the party of the first part of his election to accept said title or to rescind this agreement by notice in writing within ten days after the expiration of the thirty days, which notice shall be sent to party of the first part by United States registered mail, postage prepaid, addressed

to it at its offices in the city of St. Louis, Missouri."

On November 24, 1917, Nix deposited the sum of $50,000 in the bank to the credit of the company. The abstracts were delivered to Mr. Rice for examination, and he disapproved the title to most, if not all, of the properties, his opinions to Nix being dated November 27, 1907. On December 6, 1917, Nix wrote the company as follows:

"St. Louis Smelting & Refining Company,

"International Life Building,

"St. Louis, Missouri.

"Gentlemen:

"Referring to my contract with you dated the 26th day of October, 1917, and to the extensions and modifications thereof, made by us subsequent to this date, I hereby notify you that my attorney, Mr. Dick Rice, of Miami, Oklahoma, has examined and rejected and disapproved the abstracts of title submitted by you to me for his examination October 31, 1917.

"You are further notified that under the terms of said contract, I hereby elect to exercise my right and privilege of rescinding said contract and agreement, and you may treat this as a notice of my election to rescind, and you are hereby notified and required to return to me the sum of fifty thousand dollars ($50,000.00) paid to you under the terms of said contract.

"Yours truly,

"E. D. Nix.

"P. S. I enclose opinions on abstracts. E. D. N."

This letter was sent by registered mail. Upon refusal of the company to return the $50,000 paid, Nix brought this suit for the recovery thereof.

The company contended that within three days from the date of the opinions by Dick Rice, attorney for Nix, disapproving the titles to the property, and before Nix notified it of his election to rescind the contract, Rice telegraphed the company that whatever objections he had to said title could be ironed out, and that the company upon receipt of copies of Rice's opinions did, with due dispatch, proceed to overcome the objections made to said titles, and that such objections were overcome and Nix was given prompt notice thereof. It further contended that the election of Nix to rescind said contract was not made in good faith or because the titles were defective, but because he had been unable to arrange the subsequent payments called for in the contract, and that afterward Nix requested it to grant an additional extension of time within which to arrange for the payments called for by the contract,

and that in compliance with said request the company did grant said extension and afterward redelivered to Nix, at his request, the abstracts of title for re-examination by an attorney other than Mr. Rice; that Nix afterward notified the company that another attorney had rendered him an opinion showing the titles of the company to said properties to be good, but that Nix had failed to make any additional payment under said contract within the time allowed therefor, and forfeited all rights thereunder.

A trial to a jury resulted in a verdict in favor of Nix for the amount sued for, upon which judgment was rendered, and from which the company has appealed.

Plaintiff in error first contends that the contract was entered into between Nix and the company and that there was no provision therein to the effect that Nix was acting as agent for any one else; that he was the sole principal with whom the company dealt and all negotiations leading up to the conclusion of the contract were merged in the contract.

The contract shows on its face that it was between the company and Nix, and there is nothing contained therein indicating that Nix was acting for others. Other parties were with Nix when he called at the office of the company to negotiate the contract and it might be inferred that they were interested in the transaction, but as to whether or not the officers of the company were advised that these parties were interested, or that Nix was acting as their agent, the evidence is in conflict. However, as we view the case, it matters not whether he was acting for himself or for undisclosed principals. The contract was made with him and this action was brought by him, and he must be treated as the sole party in interest. Whether or not he is entitled to prevail depends upon two questions: First: Was his election to rescind the contract on the ground of defective titles made in good faith? Second: Did he after notifying the company that he rescinded the contract request and obtain of the company an extension of time within which to make the payments required by the terms of the contract, and failing to make such payments within the time granted, forfeit all his rights under the contract?

The company insists that his election to rescind was not made in good faith or because the titles were defective, but because he was unable to arrange the subsequent payments called for by the contract.

The contract provided that abstracts should be submitted to and titles approved

by Dick Rice, attorney for Nix, and that in the event of disapproval of the title to one or more tracts of land, Nix should have the option to elect whether he should accept said titles or rescind the agreement.. If said agreement was rescinded by reason of the disapproval of said titles by said attorney, then the company should return to Nix the $50,-000 paid by him. The law seems to be well settled that when by the terms of a contract for the sale of lands the title is to be approved by any particular person, the opinion of such person is final and binding upon said parties in the absence of fraud or bad faith. Church v. Shanklin (Cal.) 30 Pac. 789, 17 L. R. A. 207; First National Bank of Waurika v. Clay, 74 Oklahoma, 177 Pac. 115. But there is in such contracts the implied condition that the person designated to approve the title shall act with entire good faith to both of the contracting parties, and the want of such good faith will dispense with the condition requiring such approval, and one of the parties will not be permitted to avail himself of the condition to defeat the right of the other to recover for violation of the contract where there has been fraud or mala fides on the part of the person designated to approve or disapprove the titles. 6 R. C. L. 956. So in this case, if the evidence shows that Rice acted in bad faith in disapproving the titles, then Nix cannot take advantage of such disapproval, and should not be permitted to rescind the contract because thereof.

It appears that the abstracts were delivered to Rice on October 31, 1917, and that on November 30, 1917, Rice wired J. A. Castleton, vice president of the company, as follows:

"J. A. Castleton, 214x256.—I Vice Pres. St. Louis Smelting & Refg. Co., International Life Bldg. St. Louis, Mo. Have not had time to make a full investigation of different abstracts of title and leases but from investigation made I am unable at this time to pass the title as a good title. I think that all objections can be ironed out. I understand that by extending the time to make the payments called for in the contract that you automatically extended the time for me to examine the abstracts of title situation is progressing nicely."

While his opinions rendered to Nix were all dated November 27, 1917, and this fact is pointed out as indicating bad faith on Rice's part, yet Rice testified that while his opinions were dated November 27th, they were not all written on that day: that the first opinion was dictated to his stenographer on that day, and that he continued to examine the abstracts until about December 5, 1917, when he dictated the last

opinion; that the question then arose as to when the opinions should be dated, and he instructed the stenographer to date them all as of November 27th. Rice further testified:

"Q. There are a number of objections, Mr. Rice, given to each of these abstracts; were they made from the record as shown by the abstract?

"A. Yes, sir; the abstracts each one of them disclosed the imperfections in the title I set forth in each opinion.

"Q. Were you actuated by any cause or motive other than so shown in the abstract?

"A. No, sir; I was not. The objections were all well taken and were all made in good faith, the abstracts so show it, and afterwards, after I wrote these opinions, made these objections, I was advised and received information that the St. Louis Smelting & Refining Company spent two or three thousand dollars in overcoming the objections I made, that is, in fixing them up and getting the record straight."

It is not contended by the company that Rice's objections to the titles were unfounded, or that the titles were in fact perfect.

The burden was on the company to prove that Nix or Rice acted in bad faith in rejecting the titles. First National Bank of Waurika v. Clay, supra. The question of such bad faith was for the jury. The jury found that the company failed to sustain the burden cast upon it in this regard, and the evidence is ample to sustain said finding.

It is next contended that after Nix notified the company of his election to rescind the contract, and on January 23, 1918, the parties entered into a new agreement whereby the time for making the second payment of $250,000 under the contract of October 26, 1917, was extended to February 12, 1918, but that Nix failed to make such payment under the extended contract, and his interest in the contract and property terminated. This contention is based on the following letters:

"Miami, Oklahoma,
"January 23, 1918.

"St. Louis Smelting & Refining Co.,

"St. Louis, Missouri.

"Gentlemen: Referring to our conversation regarding the sale of your properties in Ottawa county, Okla., where I had for sale by a contract with you dated October 26, 1917, I wish to say that I am willing and wish to undertake the sale of said property on the terms and conditions named in said contract, but I wish it expressly understood that this shall in no way deprive me of my

rights or modify the same in so far as rescinding the same is concerned and my right to recover the $50,000 paid to you under the contract as above stated. This arrangement shall in no way deprive you or myself of the rights which have accrued or be affected by the contract dated October 26, 1917, or any subsequent extension thereof.

"In accordance with your suggestion I would like to have you write me a letter saying that I am granted until February 12, 1918, to consummate the deal.

"And in line with our understanding I will have Mr. George Booth, attorney, Title Guaranty Bldg., pass on the titles and report on or before February 1, 1918, who was selected in accordance with an understanding with Mr. E. B. Denison, who is now associated with me in this deal.

                    "Yours truly,
                              E. D. Nix."
"EDN M. J.
                    "St. Louis, Mo.,
                              "January 23, 1918.
"Mr. E. D. Nix,

"Miami, Oklahoma,

"Dear Sir:

"In accordance with your request the undersigned St. Louis Smelting & Refining Company, does hereby grant you an extension of time to and including the 12th day of February, 1918, to consummate the contract entered into on the 26th day of October, 1917, by and between the undersigned, St. Louis Smelting & Refining Company, as party of the first part, and yourself as party of the second part, concerning certain mineral rights in the county of Ottawa, state of Oklahoma.

"The maturity of the notes called for by said contract is altered as follows:

"1 note for the sum of $238,888 89 shall be due on or before 30 days from February 12, 1918.

"1 note for the sum of $338,888.89 shall be due on or before four months from February 12, 1918.

"1 note for the sum of $338,888.89 shall be due on or before ten months from February 12, 1918.

"This extension being subject to all the terms and conditions contained in said contract dated October 26, 1917.

                    "Yours very truly

"St. Louis Smelting & Refining Company.

"By J. A. Castleton, 2nd Vice President.

"Accepted: On basis my letter this date. E. D. Nix."

It will be observed that by the contract dated October 26th, Nix was not undertaking a sale of the property for the company, but by that contract he agreed to purchase the property, while in his letter of January 23, 1918, he stated that he wished to undertake the sale of said property on the terms and conditions named in said contract. At the time this letter was written, Nix had rescinded the contract of October 26th, and it seems clear to us that by this letter he merely wanted to undertake a sale of the property. There is nothing in the letter indicating that he desired further time to make the payment under the original contract, or that he intended to waive his former rescission thereof. To the contrary, he expressly stated that he wished it understood that his proposition should in no way deprive him of his rights or modify the same in so far as rescinding the contract was concerned and his right to recover the $50,000 paid thereunder, and that the agreement should in no way deprive him or the company of any rights which had accrued or to be affected by the contract of October 26th. That the parties had been talking of a sale of the property by Nix is evident from the language of this letter, for Nix there said that "In accordance with your suggestion I would like to have you write me a letter saying that I am granted until February 12, 1918, to consummate the deal," and that in line with their understanding he would have Mr. Booth, an attorney, pass the titles. In answer to this letter the company wrote Nix that it granted him an extension of time to and including the 12th day of February, 1918, to consummate a certain contract entered into on the 26th day of October, 1917, and on the bottom of this letter Nix wrote "Accepted: On basis my letter this date."

It is obvious that the company did not accept nor intend to accept the proposal contained in Nix's letter, for it proposed to grant an extension of time within which Nix could make the payments provided for in the contract, while Nix had proposed to undertake the sale of the property. It is also obvious that Nix did not accept the counter-proposition made by the company, for he accepted on the basis of his original proposal, which was not that he should buy the property, but that he would undertake the sale of the property at the same price and on the same terms mentioned in the contract. Prior to that time, and on December 19, 1917, Nix had filed suit against the company to recover the $50,000 paid by him, and summons had been served on the company. It is evident that Nix did not intend to waive his prior rescission of the contract, and his action cannot be so construed, for he did not accept the proposition of the company unconditionally.

In order that an offer and acceptance may result in a binding contract the acceptance must be absolute, unconditional, and identical with the terms of the offer. It must in every respect meet and correspond with the offer; any qualification of or departure from those terms invalidates the offer. Clark on Contracts, page 36; La Compania Bilbania De Navegacion De Bilboa v. The Spanish American Light & Power Co. 146 U. S. 483, 36 L. Ed. 1054; Minneapolis & St. Louis Ry. Co. v. Columbus Rolling Mill Co., 119 U. S. 149, 30 L. Ed. 376; Tilley v. City of Chicago et al., 103 U. S. 155, 26 L. Ed. 374, 6 R. C. L. 608; Weaver v. Burr (W. Va.) 3 L. R. A. 94.

By Nix's letter to the company he proposed to undertake a sale of the property for the company, while by the company's reply it agreed to grant him additional time within which to buy and pay for the property under the terms of the contract of October 26, 1917. This was not an acceptance of the proposition made by him. Nix did not accept the terms contained in this letter absolutely, but his acceptance was upon the terms proposed in his letter. Therefore, we have a situation where neither party accepted unconditionally and absolutely the terms proposed by the other, and under these circumstances it cannot be said that a binding contract was entered into or that Nix waived his right to rescind the contract of October 26th.

Complaint is next made of the action of the court in giving instructions numbered 4 and 5, but an examination of these instructions convinces us that the same are not subject to the criticism made: that they are not, as contended by the company, unintelligible or confusing.

Complaint is further made of the action of the court in refusing to give to the jury certain instructions requested by the company, but as the questions presented thereby were covered by the instructions given, the court did not err to the prejudice of the company in refusing such requested instructions.

An examination of the entire record fails to disclose error prejudicial to plaintiff in error; therefore, the judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, COCHRAN, and MASON, JJ., concur.