## DAVIS et al. v. INDIAN TERRITORY CO.
### No. 1560.

Circuit Court of Appeals, Tenth Circuit.
Dec. 23, 1937.

977

Solon W. Smith, of Oklahoma City, Okl. (J. B. Dudley, James S. Twyford, and William J. Crowe, all of Oklahoma City, Okl., on the briefs), for appellants.

Fred M. Carter, of Bartlesville, Okl. (W. P. McGinnis, of Bartlesville, Okl., on the briefs), for appellee.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On November 22, 1929, the Indian Territory Company, hereinafter called the Company, and Longenecker entered into a contract in writing whereby Longenecker agreed to execute and deliver to the Company assignments of valid oil and gas leases covering 6,320 acres of land in a solid block, situated in Woodward County, Oklahoma, and particularly described in the contract, and to deliver to the Company abstracts of title covering such lands "showing title satisfactory to attorneys for" the Company. The contract recited that the Company had deposited in the Liberty National Bank of Oklahoma City the sum of $4,000.00 to be used in payment of drafts attached to leases upon the lands in the solid block, or upon lands within 1½ miles of the outer limits thereof, upon approval of such drafts by the Company.

It further recited that all of the leases taken in the name of Longenecker upon the lands in the solid block and in the hands of the Company and all leases on lands within (a mile and one-half 1½ miles) of the outer limits of the solid block which should thereafter be taken in the name of Longenecker and delivered to the Company, together with any balance remaining in the deposit, should be held by the Company as a guaranty of the performance by

Longenecker of his obligations under the contract.

It expressly provided that leases covering all of the lands in the solid block should be assigned and delivered to the Company.

It further provided that upon completion of delivery of the assignments and approval of the titles, the balance of the deposit should be paid to Longenecker, and that the Company should pay him a sum which, with the $4,000.00 deposited, would equal $2.25 per acre for the acreage covered by the leases in the solid block.

Davis and Longenecker entered into an oral agreement whereby the former was to assist the latter in carrying out the contract with the Company and under which they were to share the profits equally.

Leases covering 5,280 acres of land in the solid block and 3,920 acres within 1½ miles of the outer limits thereof were on deposit in the Liberty National Bank of Oklahoma City accompanied by drafts. Davis advanced $9,000.00 and the Company $1,000.00 with which these drafts were taken up. Assignments of the leases covering 5,200 acres of the lands in the solid block and 2,920 acres of the lands within 1½ miles of the outer limits thereof were executed by Longenecker and delivered to the Company. Abstracts for all of such lands except 640 acres were also delivered to the Company. Leases covering 1,080 acres were delivered to the Company without assignments. The Company recorded assignments covering 4,840 acres.

The abstracts were turned over to counsel for the Company for examination. He found many defects in the titles, made requirements which would have to be met before he would approve the titles and advised Longenecker and Davis in writing of such requirements.

Longenecker and Davis failed to meet these title requirements and on March 26, 1930, Longenecker and the Company entered into a supplemental contract. It referred to the contract of November 22, 1929; recited that the Company had made certain title requirements; that Longenecker had not met such requirements and had been unable to fulfill the terms of the contract of November 22, 1929, and provided:

"Now therefore, in consideration of the mutual interests of the parties and of the agreements herein entered into, it is agreed that the said contract of November 22, 1929 shall be supplemented and modified to the extent that the Indian Territory Company shall be permitted to put its own agents to work in the fulfillment of title requirements upon the block of leases hereinbefore referred to and shall be authorized to take any steps or expend any funds in its judgment proper to procure full, complete and merchantable title to oil and gas mining leases covering the lands in said contract of November 22, 1929, described, and to deduct all costs and expenses in connection therewith from any purchase price due or to become due to second party [Longenecker] or J. C. Davis for said block of leases or any part thereof."

Neither Longenecker nor the Company met all the title requirements.

On August 26, 1930, the Company returned the leases and abstracts with reassignments of the assigned leases to Longenecker at his office in Oklahoma City. Two days later Longenecker returned the abstracts, papers, leases, assignments and reassignments to counsel for the Company.

Longenecker failed to furnish leases on certain of the lands in the solid block aggregating 1,040 acres. A number of the leases lapsed for nonpayment of rentals during the months of August, September, October and November, 1930.

On April 9, 1931, Longenecker and Davis brought this action against the Company to recover the sum of $2.25 per acre for 9,080 acres of leases, less a credit of $2,800.00 for moneys advanced by the Company. By an amendment to the petition they sought to recover $1.25 per acre on account of 200 acres of land in the solid block on which the Company had acquired leases directly from the landowners at a cost of $1.00 per acre, and $2.25 per acre on account of 160 acres of land in the solid block, a lease of which was tendered by Davis to the Company during the trial.

The Company filed an answer and cross-petition in which it alleged that Davis and Longenecker represented to the Company that they owned or had contracted for the purchase of oil and gas leases on the 6,320 acres in the solid block, and that the leases they had not already purchased were deposited under escrow agreements in banks ready to be delivered to them upon payment of the purchase price; that there were several hundred acres of land in the solid block, which geological investigations indicated were the most valuable for oil

and gas, on which Davis and Longenecker had not acquired leases and had not secured the deposit of leases in escrow; that when the Company returned the leases, abstracts and assignments with reassignments to Longenecker in August, 1930, Longenecker and Davis had not acquired leases on a portion of the lands in the solid block and had failed to meet the requirements of counsel for the Company necessary to make the titles merchantable on more than 2,000 acres of the lands in the solid block. It set up that it had advanced $2,800.00 to Davis and Longenecker and had expended for abstracts and correction of title defects $1,702.14, and sought to recover from Longenecker and Davis on its cross-petition, for breach of the contract, damages in the sum of $4,502.14.

The parties entered into a stipulation waiving trial by jury and agreeing that the cause be referred to Honorable John J. Hildreth as referee to take the testimony and make findings of fact and conclusions of law and report the same to the court. An order of reference was entered in accordance with the provisions of the stipulation.

Longenecker and Davis undertook to excuse their failure to furnish abstracts or title requirements showing title satisfactory to counsel for the Company by alleging and undertaking to prove that Lykes, head of the land department of the Company, subsequent to the contract of March 26, 1930, agreed that the employees of the Company would procure such title requirements. They undertook to excuse their failure to furnish all the leases in the solid block by alleging and undertaking to prove that the Company had acquired leases on certain lands in the block directly from the landowners; and, contrary to a verbal understanding with a representative of the Company, had recorded the leases assigned and thereby made it impossible for Longenecker and Davis to procure the additional leases. They proved that when a major oil company goes into a territory and that fact becomes known, the price of leases substantially increases.

Lykes denied that he agreed with or assured Longenecker and Davis that employees of the Company would procure the title requirements. The Company offered uncontroverted proof that Lykes was without authority to make a contract obligating the Company to secure the title requirements. Mr. Gordon, vice president of the Company, testified that he advised Davis prior to August, 1930, that the Company was under no obligation to obtain the title requirements and suggested that Davis secure such requirements.

Lykes testified that representatives of the Company were sent out to purchase mineral interests or royalties in lands most favorably located in the solid block; that these representatives discovered certain lands in the solid block most favorably located on the structure had not been leased; that the representatives were instructed to secure leases on such lands directly from the landowners; that leases on 200 acres were acquired by the Company from the landowners; and that he had to submit all leases to the executives of the Company for approval.

Gordon testified that he directed the recording of the leases because they were held as security for money advanced by the Company.

The Company offered uncontroverted proof that at the time the leases, abstracts and assignments were redelivered to Longenecker in August, 1930, title requirements had been made by the attorneys examining the titles for the Company which had not been fulfilled by Longenecker and Davis, as follows: 320 acres were leased to other oil companies; the title to 266-2/3rds acres was non-merchantable; leases had not been acquired on 663-1/3rd acres; the title to 160 acres was in litigation; no assignment had been delivered of a lease covering 80 acres; and affidavits of possession by owner and certificates as to federal court liens had not been secured on 3,600 acres.

The referee found that the parties duly entered into the contract and supplemental contract; that the attorneys examining the titles for the Company made title requirements on practically all of the tracts of land in the solid block and furnished copies thereof to Longenecker and Davis, or their representatives; that following the execution of the supplemental contract neither party took any aggressive steps to meet such title requirements; that Longenecker and Davis failed to comply with the contract and supplemental contract by failing to furnish assignments of valid oil and gas leases covering all of the lands in the solid block and by failing to furnish abstracts and title requirements showing titles satisfactory to the attorneys for the Company; that there was no proof that the attorneys for the Company in making such

title requirements did not act in good faith; that the Company paid to Longenecker and Davis $2,800.00 on the contract price of the leases; that Longenecker and Davis could have paid the annual delay rentals on all of the leases as they became due in August, September, October and November, 1930, by the exercise of ordinary diligence, and that the Company was under no obligation to pay such delay rentals until the delivery of all the assignments and the approval of the titles by its attorneys, and was not responsible for the nonpayment of such delay rentals.

The referee found the issues generally in favor of the Company and against Longenecker and Davis.

The referee concluded as a matter of law that the written contracts superseded all oral negotiations and defined the obligations of the respective parties thereto; that the testimony with reference to alleged oral agreements, either before or subsequent to the execution of the written contracts, tending to vary or contradict the terms thereof was incompetent; that the Company did not violate the terms of the written contracts by recording the assignments of the leases; that Longenecker and Davis failed to comply with the contracts by failing to furnish assignments of valid leases of all of the lands in the solid block, by failing to furnish merchantable titles satisfactory to the attorneys for the Company, and by failing to meet the title requirements made by its attorneys; that the petition should be dismissed at the cost of Longenecker and Davis, and that the Company should recover on its cross-petition from Longenecker and Davis the sum of $2,800.00 paid on the purchase price of the leases, together with costs of suit.

Longenecker and Davis filed exceptions and objections to the findings, conclusions, and report of the referee. The trial court approved and confirmed the findings and conclusions of the referee, except it found that Davis was not a party to the contract with the Company and that it was not entitled to recover on its cross-petition for the moneys advanced on the purchase price as against Davis, and assessed the cost of the reference one-half to Longenecker and Davis and one-half to the Company.

Longenecker and Davis have appealed.

■■■■ Counsel for Longenecker and Davis assert that the referee and the trial court failed to make findings and conclusions upon material issues. We are of the opinion that the findings of the referee, when the applicable law is considered, covered all of the essential issues, and that they were supported by substantial evidence. This being an action at law and the reference having been consented to by the parties, the findings of the referee have the same force and effect as a special verdict of a jury, whether the reference was under the state statute [1] or was a common law reference.[2]

The undisputed evidence shows that Longenecker and Davis failed to furnish abstracts showing titles satisfactory to the examining attorneys for the Company, and failed to meet the title requirements made by attorneys for the Company. There was neither pleading nor proof that the objections raised to the titles by attorneys for the Company were not made in good faith. From the evidence adduced there could be no doubt that many of the defects were of serious character and affected a substantial portion of the lands.

■■■■ Where the contract of sale provides that the seller shall furnish an abstract of title showing title satisfactory to attorneys for the purchaser, the purchaser is not bound if his counsel acting in good faith disapproves the title.[3]

The supplemental contract did not release Longenecker and Davis from their

[1] Shannon v. Petherbridge, 17 Okl. 507, 87 P. 668; Erisman v. Kerwin, 8 Okl. 92, 56 P. 858; McCulloch v. Perry, 150 Okl. 203, 1 P.2d 170, 175; Cromwell v. Hamilton, 89 Okl. 225, 214 P. 694; Alder v. Edenborn, D.C.N.Y., 198 F. 928, 931.

[2] Boatmen's Bank v. Trower Bros. Co., 8 Cir., 181 F. 804; United States v. Ramsey, C.C.Idaho, 158 F. 488; Paine v. Standard Plunger Elevator Co., 3 Cir., 203 F. 242, 246; Dundee Mortgage Co. v. Hughes, 124 U.S. 157, 159, 160, 8 S. Ct. 377, 31 L.Ed. 357.

[3] Farm Land Mortgage Co. v. Wilde, 41 Okl. 45, 136 P. 1078; First National Bank of Waurika v. Clay, 74 Okl. 112, 177 P. 115; St. Louis Smelting & Refining Co. v. Nix, 101 Okl. 197, 224 P. 982; Central Commercial Oil Co. v. Indian T. I. O. Co., 171 Okl. 30, 41 P. 2d 683; Liberman v. Beckwith, 79 Conn. 317, 65 A. 153, 8 Ann.Cas. 271; Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L.R.A.,N.S., 741, 130 Am. St.Rep. 382; Watts v. Holland, 86 Va. 999, 11 S.E. 1015; Giles v. Paxson, C.C. Iowa, 40 F. 283.

obligation to furnish abstracts showing titles satisfactory to attorneys for the Company or impose upon the Company the duty to secure the title requirements. It merely authorized the Company to assist in securing such requirements.

The proof shows that the employees of the Company were not authorized to vary the terms of the contracts with respect to title requirements. Moreover, under the statutes of Oklahoma a written contract cannot be varied except by another written contract or an executed verbal agreement. O.S.1931, § 9502, 15 Okl.St. Ann. § 237. Furthermore, Lykes denied that he agreed with Longenecker and Davis to secure the title requirements and on that issue the referee found in favor of the Company.

The leases being in undeveloped territory the requirement that the leases should cover a solid block of acreage was an important provision of the contract. Longenecker and Davis failed to furnish assignments of leases covering all of the lands in the solid block.

Section 9456, O.S.1931, 15 Okl.St.Ann. § 137, provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

This statute precluded proof of the alleged contemporaneous oral agreement not to record the leases. See Western Silo Co. v. Pruitt, 94 Okl. 154, 221 P. 106; Nachtsheim v. Bartle, 131 Okl. 166, 268 P. 195. Furthermore, the leases were given to the Company as security for advances made by it and it had a right to protect its lien by recording the leases.

The Company acquired a lease on one tract of 160 acres from a lessee of the owner with the written consent of Longenecker and Davis. It acquired other leases on 200 acres of land located at the most favorable point on the structure directly from the owners, in order to protect its rights under the contract. These acts on the part of the Company did not excuse Longenecker and Davis from furnishing the leases and assignments on other tracts in the solid block.

It is our conclusion that Longenecker wholly failed to perform his obligations under the contract and supplemental contract to furnish valid leases and assignments thereof covering all of the lands in the solid block and to furnish abstracts of title thereto or title requirements showing title satisfactory to the attorneys for the Company and that such failure was neither waived nor excused.

The judgment is accordingly affirmed.

